**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 12-cv-02632-REB-KMT

R. CHRIS LUX,

    Plaintiff,

v.

GREAT NORTHERN INSURANCE CO.,

    Defendant.

_____

**ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT**
_____

**Blackburn, J.**

    This matter is before me on the following: (1) **Great Northern Insurance Company's Combined Motion and memorandum Brief in Support of Motion for Summary Judgment** [#15][1] filed March 14, 2013; and (2) **Great Northern Insurance Company's Combined Motion and Memorandum Brief in Support of Motion for Summary Judgment** [#22] filed July 30, 2013. The plaintiff filed responses [#16 & #24], and the defendant filed replies [#18 & #27]. I deny both motions.[2]

**I. JURISDICTION**

    I have jurisdiction over this case under 28 U.S.C. § 1332(a) (diversity of citizenship). A federal court exercising diversity jurisdiction must apply the substantive

---

[1] "[#15]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

[2] The issues raised by and inherent to the motions for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motions stand submitted on the briefs. Cf. FED. R. CIV. P. 56(c) and (d). *Geear v. Boulder Cmty. Hosp.*, 844 F.2d 764, 766 (10th Cir.1988) (holding that hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

law of the state in which the federal court sits.  ***Erie R. Co. v. Tompkins***, 304 U.S. 64, 78 (1938).  The substantive law of the state of Colorado is controlling in this case.

## II.  STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); ***Celotex Corp. v. Catrett,*** 477 U.S. 317, 322 (1986).  A dispute is "genuine" if the issue could be resolved in favor of either party.  ***Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.***, 475 U.S. 574, 586 (1986); ***Farthing v. City of Shawnee,*** 39 F.3d 1131, 1135 (10th Cir. 1994).  A fact is "material" if it might reasonably affect the outcome of the case.  ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248 (1986); ***Farthing,*** 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine fact issue.  ***Concrete Works, Inc. v. City & County of Denver,*** 36 F.3d 1513, 1517 (10th Cir. 1994), cert. denied, 115 S.Ct. 1315 (1995).  By contrast, a movant who bears the burden of proof must submit evidence to establish every essential element of its claim or affirmative defense.  ***See In re Ribozyme Pharmaceuticals, Inc. Securities Litigation***, 209 F.Supp.2d 1106, 1111 (D. Colo. 2002).  In either case, once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper.  ***Concrete Works,*** 36 F.3d at 1518.  All the evidence must be viewed in the light most favorable to the party opposing the motion.  ***Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services,*** 165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 120 S.Ct. 53 (1999).  However, conclusory

statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. ***Rice v. United States,*** 166 F.3d 1088, 1092 (10th Cir.), cert. denied, 120 S.Ct. 334 (1999).

### III. FACTS

The plaintiff, R. Chris Lux, purchased a home owner's insurance policy from the defendant, Great Northern Insurance Company. According to Mr. Lux, Great Northern breached the insurance contract when it refused to pay him the full amount of benefits he claimed. Mr. Lux filed a total of three claims with Great Northern; all three claims arose from water leaks that occurred on January 6, 2008, at the home owned by Mr. Lux in Snowmass Village, Colorado.

It is undisputed that Mr. Lux made his original claim to Great Northern on January 8, 2008. In response to this claim, Great Northern made a payment to Mr. Lux on June 10, 2008, in the amount of 142,160.72 dollars. *Motion for summary judgment* [#22], Exhibit A-2 (Dennis Bills Affidavit), ¶ 9. This payment covered damage to the interior of the home caused by a water leaks, investigation of the leaks, and rental income lost while the home was being repaired. Ultimately, it was determined that a deck on the home had to be partially removed to investigate and repair the leaks. On April 1, 2009, Mr. Lux filed a claim for an additional 91,960.80 dollars for the cost of removing and replacing a portion of the deck. On April 7, 2009, Great Northern denied this claim, contending the deck repair was excluded from coverage under the construction defect exclusion in the policy. On March 14, 2012, Mr. Lux filed a claim for 299,508.75 dollars to cover rental income lost while the deck was being repaired. Great Northern denied this claim, contending rental income lost during repair of the deck is

excluded from coverage under the construction defect exclusion in the policy. Mr. Lux filed this lawsuit on April 6, 2012, in the District Court of Pitkin County, Colorado [#4]. Great Northern removed the case to this court on October 3, 2012.

Great Northern raises two distinct issues in its two motions for summary judgment. In its first motion, Great Northern argues that the policy includes a provision which limits the time in which an insured may file suit against Great Northern. According to Great Northern, Mr. Lux's suit was not timely filed. In its second motion, Great Northern argues that the policy excludes coverage for construction defects. According to Great Northern, the losses that are the subject of the April 1, 2009, and March 14, 2012, claims are not covered because they fall within the construction defects exclusion. Mr. Lux disputes both contentions. Additional facts are discussed below.

## IV.  ANALYSIS

### A.  Two Year Limitation Period

Great Northern argues that Mr. Lux's claim is barred by the policy's two year period of limitation. According to Great Northern, the Lux insurance policy contains a condition limiting the time to file suit against the company to two years after a loss occurs. The condition states:

> **Legal action against us**. You agree not to bring legal action against us unless you have first complied with all conditions of this policy. Except for vehicle coverage, you also agree to bring any action against us within two years after a loss occurs.

*Motion for summary judgment* [#15], Exhibit A-2, p. Y-5. The loss occurred on January 6, 2008, Great Northern first denied a claim of Mr. Lux on April 7, 2009, and Mr. Lux first

filed this lawsuit on April 6, 2012.  If this provision is part of the policy, Mr. Lux's claim is barred because it was filed more than two years after the date of the loss.

Included with Great Northern's first motion for summary judgment [#15] is the affidavit of Dennis Bills [#15-1].  Mr. Bills avers he was one of the claim representatives who handled Mr. Lux's claim.  *Motion for summary judgment* [#15], Exhibit A-1, ¶ 4.  Mr. Bills says the policy provision quoted above is part of Mr. Lux's policy, and he says a true and accurate copy of the portion of Mr. Lux's policy containing this provision is attached to his affidavit.  *Id.*, ¶ 9.

In his affidavit in support of his response [#24] to the motion for summary judgment, Mr. Lux avers he reviewed the policy that was proved to him by Great Northern's agent.  *Response* [#16], Lux affidavit [#16-1], ¶ 7.  Mr. Lux says the policy "does not, to the best of my knowledge, include a page Y-5, the "New York Policy Terms."  *Id.*  Page Y-5 of the policy includes the "legal action against us" provision on which Great Northern relies.  According to Mr. Lux, "(t)o the best of my knowledge, I have never been notified of nor have I received any document entitled 'New York Policy Terms' in connection with the insurance policy for my Colorado property."  *Id.*

In response to an order [#29] of the court, Mr. Lux filed a copy of the policy he reviewed.  *Plaintiff's reply* [#33] filed November 6, 2013, Exhibits 1 and 2.  In addition, Mr. Lux provided an additional affidavit concerning the policy.  In this affidavit, Mr. Lux avers the policy included with his affidavit "is a true and accurate copy of the policy maintained in my records and is, to the best of my knowledge and belief, the policy that was provided to me when I purchase [*sic*] coverage for my home in Snowmass Village, Colorado, and when I renewed that policy in 2007."  *Id.*, Affidavit of R. Chris Lux, ¶ 2.

5

Taken at face value, the competing affidavits of Mr. Bills and Mr. Lux are in conflict about whether the "legal action against us" provision is part of Mr. Lux's policy. According to Great Northern, an affidavit which includes the qualification "to the best of my knowledge" or a statement of belief is not sufficient to plead and preserve a genuine issue of material fact. In the view of Great Northern, to the extent Mr. Lux's uses the qualifier "to the best of my knowledge and belief" in his affidavits, they are not based on his personal knowledge, as required by Fed. R. Evid. 602 and FED. R. CIV. P. 56(c)(4). Statements not based on personal knowledge are not sufficient to demonstrate the existence of a disputed issue of material fact.

In *Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, a case cited by Great Northern, the court examined an affidavit submitted by the plaintiff. 452 F.3d 1193 (10th Cir. 2006). The plaintiff averred he was "personally familiar" with the matters addressed in the affidavit based on his "over 7 years of employment with the Defendant, Blue Cross Blue Shield." *Id*. at 1200. In paragraph 21 of the affidavit, the plaintiff said "(n)o female Individual Enrollment Specialists was [*sic*] terminated during my employment for failing to make monthly or yearly goals." *Id*. Considering the affidavit and other evidence in the record, the Tenth Circuit found that the plaintiff was not in a position to acquire the comprehensive knowledge described in paragraph 21 and "his personal knowledge does not extend so far." *Id*. The court upheld the decision of the trial court to disregard paragraph 21 based on the plaintiff's lack of personal knowledge.

In other cases cited by Great Northern, courts disregarded affidavits in which a witness claimed personal knowledge of a variety of facts described particularly in documents such as a response to a motion for summary judgment. In those cases, the

affiants qualified their statements with phrases such as "to the best of my knowledge and information" or "to the best of my knowledge and belief." *See, e.g., Told v. Tig Premier Ins. Co*, 149 Fed. Appx. 722 (10th Cir. 2005); *Predator Int'l Inc. v. Gamo Outdoor USA*, 2013 WL 1129404 (D. Colo. March 18, 2013). In *Told*, the Tenth Circuit said "(i)nformation and belief have no place in an affidavit supporting a motion for summary judgment or a response thereto." *Told*, 149 Fed. Appx. at 725. The *Told* court held it is proper to disregard an affidavit which includes a "blanket statement" that a body of facts is true, but is "completely devoid of particularity and detail. This form of affidavit left it to the court to attempt to discern which level of certainty went with which fact, a chore that the district court refused to undertake." *Id*. at 726. However, the court noted that "personal knowledge and competence to testify may be inferred if it is clear from the context of the affidavit that the affiant is testifying from personal knowledge." *Id*. at 725.

In the present case, both Mr. Bills and Mr. Lux describe in their affidavits circumstances in which each could gain personal knowledge of the terms of the policy, but each provides conflicting determinations on the key issue, whether the "legal action against us" provision is part of the policy or not. Mr. Lux provides "a true and accurate copy of the policy maintained in (his) records," a source of information from which the policy terms reasonably can be determined. *Plaintiff's reply* [#33], Affidavit of R. Chris Lux, ¶ 2. He avers he has reviewed the policy and, "to the best of his knowledge and belief," the policy does not include the "legal action against us" provision. *Response* [#16], Lux affidavit [#16-1], ¶ 7; *Plaintiff's reply* [#33], Affidavit of R. Chris Lux, ¶ 2.

Although the qualifier "to the best of my knowledge" is a limitation that raises

significant concern, given the factual context described in the Lux affidavits, I conclude that Mr. Lux has adequately described facts which show that he has personal knowledge of the terms of the policy in his possession.

Mr. Bills' affidavit and the copy of the policy filed with the court by Great Northern and Mr. Lux's affidavits and the copy of the policy he filed with the court demonstrate a genuine issue of material fact on the key question of whether the "legal action against us" provision is part of Mr. Lux's policy. Given that dispute, I may not conclude as a matter of law that Mr. Lux's claims in this case are barred by the "legal action against us" provision on which Great Northern relies.

### B.  Construction Defect Exclusion

The leaks that damaged Mr. Lux's house were caused by defects in the drainage system under the deck attached to the house. It is undisputed that the defects in the drainage system constitute construction defects. Both parties rely on the report of Wiss, Janney, Elstner Associates, Inc., a firm that investigated the leaks and the problems with the drainage system. *Motion for summary judgment* [#22], Exhibit A-2, pp. 8 - 11 (WJE Report). The WJE report discusses defects in a drainage system installed under a "plaza deck" or "patio plaza" that is part of the house. *Id*. Some of the living area of the house is under the deck. WJE concluded that leaks in the drainage system under the deck caused leakage in the interior of the house at multiple locations. *Id.*, pp. 3-4. It was necessary to remove portions of the deck to determine the sources of the leaks and to repair the leaks.

In the view of Great Northern, the cost of removal and replacement of portions of the deck to enable repair of the drainage system and the rental income lost while the

deck was repaired are not covered by the policy.  According to Great Northern, these claims fall within a policy provision which excludes coverage for construction defects. The construction defect exclusion provides:

> **Faulty planning, construction or maintenance.**  We do not cover any loss caused by the faulty acts, errors or omissions of you or any other person in planning, construction or maintenance.  It does not matter whether the faulty acts, errors or omissions take place on or off the insured property.  But we do insure ensuing covered loss unless another exclusion applies. . . .  "Construction" includes materials, workmanship, and parts or equipment used for construction or repair.

*Motion for summary judgment* [#22], Exhibit A-1, p. B-10.  The words "caused by" are defined in the policy as "any loss that is contributed to, made worse by or in any way results from that peril."  *Id.*, p. B-8.  Here, the peril is the construction defect in the drainage system under the deck. "Ensuing covered loss" is not defined in the policy.  A common definition of "ensue" is "to follow as a chance, likely, or necessary consequence: result."  ***Webster's Third New International Dictionary***, 756 (1971).[3]

In its second motion for summary judgment [#22], Great Northern seeks a judgment holding that the construction defect exclusion excludes coverage for the removal and replacement of portions of the deck and the income lost while those repairs were made.  Mr. Lux argues that the construction defect exclusion is ambiguous because it contradicts itself.  In that circumstance, Mr. Lux contends, the exclusion must be read against the insurer, Great Northern, and in favor of providing coverage to the insured, Mr. Lux.

---

[3]  When determining the plain and ordinary meaning of words, definitions in a recognized dictionary may be considered. ***People v. Forgey***, 770 P.2d 781, 783 (Colo.1989). ***Hecla Min. Co. v. New Hampshire Ins. Co.***, 811 P.2d 1083, 1090-91 (Colo. 1991).

In Colorado, insurance policies are construed using the same traditional principles of interpretation that apply to the construction of contracts generally. ***Compass Insurance Co. v. City of Littleton***, 984 P.2d 606, 613 (Colo. 1999). Unambiguous terms are interpreted in accordance with their plain and ordinary meanings and as a person of ordinary intelligence would understand them. ***MarkWest Hydrocarbon, Inc. v. Liberty Mutual Insurance Co.***, 558 F.3d 1184, 1190 (10th Cir. 2009). Insurance policy terms are ambiguous only if they are subject to more than one reasonable interpretation. ***Allstate Insurance Co. v. Juniel***, 931 P.2d 511, 513 (Colo. App. 1996). Truly ambiguous terms are construed against the insurer and in a manner that would promote rather than deny coverage. ***Blackhawk-Central City Sanitation District v. American Guarantee & Liability Insurance Co.***, 214 F.3d 1183, 1191 (10th Cir. 2000).

Courts should be wary of rewriting contract provisions and should give the words contained in the contract their plain and ordinary meaning, unless a contrary intent is evidenced within the contract itself. ***See, e.g., Lovell v. State Farm Mut. Auto. Ins. Co.***, 466 F.3d 893, 902 (10th Cir. 2006) (noting that courts should not rewrite insurance policy provisions that are clear and unambiguous) (citations omitted); ***Cyprus Amax Materials Co. v. Lexington Ins. Co.***, 74 P.3d 294, 299 (Colo. 2003) (courts should give the words contained in an insurance policy their plain and ordinary meaning). Courts may neither add provisions to extend coverage beyond that contracted for, nor delete provisions to limit coverage. ***Cyprus Amax***, 74 P.3d at 299. When interpreting a policy's provisions, a court's construction "must be fair, natural, and reasonable rather than strained and strictly technical." ***Massingill v. State Farm Mut. Auto. Ins. Co.***, 176

P.3d 816, 825 (Colo.App. 2007) (*citing Pub. Serv. Co. v. Wallis & Cos.*, 986 P.2d 924, 939 (Colo. 1999)).

When an insurance company seeks to limit or exclude coverage under the terms of an insurance policy, the insurer bears the burden of proving that a particular loss falls within an exclusion in the contract. *Colorado Intergovernmental Risk Sharing Agency v. Northfield Ins. Co.*, 207 P.3d 839, 842 (Colo. App. 2008). If a limitation or exclusion in an insurance contract is unambiguous, then that limitation or exclusion must be enforced. *Id*.

In its motion for summary judgment [#22], Great Northern contends there is a viable distinction between a loss caused by a construction defect and a loss that ensues from a construction defect. *Motion for summary judgment* [#22], pp. 7-8. In its motion for summary judgment [#22], Great Northern appears to contend that it denied coverage for repairs to the deck, because those repairs were necessitated by a construction defect, but it paid for Mr. Lux's ensuing losses. *Id.*, p. 8. Given the undisputed facts about the claims paid and denied by Great Northern, Great Northern appears to classify damage to the interior of the home and rental income lost while that interior damage was repaired as ensuing losses. Great Northern paid these claims. Great Northern views disassembly of the deck to permit repairs to the drainage system, re-assembly of the deck, and rental income lost while those repairs were made as losses caused by the construction defect. Great Northern denied coverage for these costs under the construction defect exclusion.

In response, Mr. Lux argues that the construction defect exclusion in the Great Northern policy is contradictory and ambiguous because it excludes coverage for losses

"caused by" construction defects, but it provides coverage for losses "ensuing" from construction defects. In Mr. Lux's view, the policy does not create a viable distinction between losses "caused by" a construction defect and losses "ensuing" from a construction defect. Thus, Mr. Lux contends, the construction defects paragraph reasonably can be read either to (1) exclude coverage for a loss contributed to, made worse by, or resulting from a construction defect (applying the policy's definition of "caused by"); or (2) provide coverage for a loss that is a chance, likely, or necessary consequence of a construction defect (applying the dictionary definition of "ensue"). Reading the whole paragraph, Mr. Lux asserts, one cannot determine which losses tied to a construction defect are covered and which losses tied to a construction defect are not covered.

In its reply, Great Northern argues that, read in context, the

> "ensuing loss" clause must be read to provide coverage for losses that are not contributed to, made worse by, or that in any way result from defective construction. This definition removes any ambiguity and demands that an ensuing loss be separate and distinct from a loss which is "caused by" faulty construction.

*Reply* [#27], p. 4. Great Northern seeks to exclude from the definition of an ensuing loss all losses that fall within the definition of a loss caused by a construction defect. Given the breadth of the policy's definition of losses "caused by" a construction defect, Great Northern's definition by exclusion leaves little or nothing to be included in the definition of ensuing losses. It is difficult or impossible to define a set of losses in some way related to, or ensuing from, a construction defect which excludes "any loss that is contributed to, made worse by or in any way results from" the construction defect. Tellingly, Great Northern does not propose a definition that fits this mold.

12

Mr. Lux notes that Great Northern covered repairs to the interior of his house, which losses were "undisputedly the direct result and caused by a construction defect." *Response* [#24], p. 8. In its reply, Great Northern responds by agreeing that the damage to the interior of the house was a loss caused by a construction defect, a loss not covered by the policy. Great Northern says it "chose to pay Lux a partial payment despite this reality." *Reply* [#27], p. 5.

I conclude that the construction defects paragraph is ambiguous. The applicable definitions of "caused by" and "ensuing" both are quite broad. The set of losses that are contributed to, made worse by, or result from a particular construction defect is, in general, the same set of losses that can be described as chance, likely, or necessary consequences of a particular construction defect. The applicable definitions of these two key terms define essentially the same set of losses or they define two sets of losses that overlap so broadly that a meaningful distinction between the two sets cannot reasonably be drawn. If there is any difference between these two sets of losses, the policy does not permit a reasonable reader to determine the difference. Reading the construction defects paragraph as a whole and giving that paragraph a fair, natural, and reasonable reading, one cannot determine if the loss at issue is a "caused by" loss or an "ensuing" loss and, therefore, one cannot determine if the loss is an excluded or included loss. The uncertainty caused by these conflicting definitions renders the constructive defect exclusion ambiguous.

The loss at issue here illustrates the ambiguity because the loss can be seen as fitting both definitions; as being both excluded from coverage and included in coverage. Applying the policy's definition of "caused by," the cost of removing and replacing

13

portions of the deck to permit repairs to the drainage system is a loss contributed to, made worse by, or resulting from the construction defect, the defective drain system. Such a "caused by" loss is not covered. Applying the dictionary definition of "ensue," the cost of removing and replacing portions of the deck to permit repairs to the drainage system is a loss that ensues from the construction defect because the loss is a chance, likely, or necessary consequence of the construction defect.

The fact that Great Northern paid for repair of the damage cause to the interior of Mr. Lux's house, but now argues it was not obligated to cover those losses, does not alter my conclusion that the construction defect paragraph is ambiguous. Payment or not, the ambiguity created by the conflict between the applicable definitions of "caused by" and "ensuing" remains. Depending on which definition one chooses to apply, one reasonably can read the policy to exclude or grant coverage for the loss in question.

Given this conflict in the applicable policy provision, I conclude that Great Northern has not met its burden of proving that the losses at issue here fall within the construction defect exclusion. Under Colorado law, I must read this ambiguous provision against Great Northern and in favor of providing coverage to Mr. Lux. Given the two reasonable readings of this provision discussed above, I must read the construction defect paragraph as providing coverage for the cost of removing and replacing portions of the deck to repair the drain system and for rental income lost while the deck was being repaired. The amount of these losses has not been determined by the court and is not at issue in the motion for summary judgment.

## V.  CONCLUSION & ORDERS

Viewing the undisputed facts in the record in the light most favorable to the plaintiff and reading the applicable insurance policy under the standards established in Colorado law, the defendant, Great Northern Insurance Company, has not shown that it is entitled to summary judgment under FED. R. CIV. P. 56.

**THEREFORE, IT IS ORDERED** as follows:

1.  That **Great Northern Insurance Company's Combined Motion and memorandum Brief in Support of Motion for Summary Judgment** [#15] filed March 14, 2013, is **DENIED**; and

2.  That **Great Northern Insurance Company's Combined Motion and Memorandum Brief in Support of Motion for Summary Judgment** [#22] filed July 30, 2013, is **DENIED**.

Dated November 18, 2013, at Denver, Colorado.

**BY THE COURT:**

*/s/ Robert E. Blackburn*
Robert E. Blackburn
United States District Judge